**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JOSHUA L. ADKINS, ) | |
| ) | CASE NO. 1:13CV300 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Joshua L. Adkins ("Adkins ") challenges the final decision of the Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying his claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case REMANDED for further proceedings consistent with this Opinion.

**I. Procedural History**

On April 15, 2009, Adkins filed applications for POD, DIB, and SSI alleging a disability onset date of August 14, 2008 and claiming he was disabled due to bipolar disorder, anxiety,

learning disabilities, cognitive issues, and asthma. (Tr. 13, 205.) His application was denied both initially and upon reconsideration. Adkins timely requested an administrative hearing.

On April 7, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Adkins, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 29-53.) On May 20, 2011, the ALJ found Adkins was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 13-23.) The ALJ's decision became final when the Appeals Council denied further review. (Tr. 1-3).

## II. Evidence

### *Personal and Vocational Evidence*

Age twenty-six (26) at the time of his administrative hearing, Adkins is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563(c) & 416.963(c) (Tr. 33.) He took special education classes and has an eleventh grade education. (Tr. 33, 423).

### *Hearing Testimony*

At the April 7, 2011 hearing, Adkins testified as follows:

- He did not graduate from high school, and has not earned a GED. (Tr. 33-34.) He is unable to read or write. (Tr. 39.)

- He has tried working at five or six different jobs in the past. However, he lost those jobs because he "was too slow" and "couldn't comprehend" his job responsibilities. (Tr. 39-40.) He lost a job at a "machine place" because it was too fast-paced for him and it required him to write. (Tr. 40.) The longest he ever held down a job was two to three months at a "tire place." He lost that job because he "couldn't comprehend right" how to line up the tires. (Tr. 39-40.)

- He has been receiving treatment for his mental health issues since 2003. He needed treatment because he "can't really do anything by myself. I got to have somebody there with me." (Tr. 37.) If he is alone, he thinks negative thoughts and "will go crazy and suicide." (Tr. 37-38.)

- He began experiencing auditory hallucinations in 2003. He would hear voices

> that made him "want to hurt people and hurt myself." (Tr. 38.) He no longer hears these voices now that he is taking medication. He takes Geodon and Celexa. (Tr. 38.)

- He has difficulty remembering what he needs to do every day. His girlfriend and his girlfriend's mother help him remember. (Tr. 41.) He has never lived on his own and currently lives with his girlfriend's mother. (Tr. 41-42.)

The VE testified she was uncertain whether Adkins had any past relevant work, but classified it as production assembler, material handler, and off-bearer for fabricating machines. (Tr. 44-45.) The ALJ then posed the following hypothetical:

> This first hypothetical, mental limitations only, I'm basing it in on a combination of limitations from Exhibits 8F, 7F, 5F. The limitations are as follows: able to maintain sufficient concentration and persistence to perform simple, repetitive tasks, but would need a simple job demonstrated in order to comprehend the task; would not be able to adequately read written instruction; unable to manage funds; capable of understanding, remembering and carrying out simple and routine instructions; able to interact occasionally and superficially; receive instructions and ask questions appropriately in a work setting; able to cope with the ordinary and routine changes in a work setting that is not fast paced or of high demand. Would that hypothetical individual be able to perform any of the past work if it turns out to be relevant, that you've described for Mr. Adkins?

(Tr. 45-46.) The VE testified such a hypothetical individual would not be able to perform any past relevant work, but would be able to perform other unskilled jobs including car washer (800 jobs locally; 150,000 jobs nationally); industrial cleaner (6,000 jobs locally; 1 million jobs nationally); and, light housekeeping, cleaner (8,000 jobs locally; 400,000 jobs nationally). (Tr. 46.)

The ALJ then asked a second hypothetical, as follows:

> Let me ask an alternative hypothetical now, which I'm going to base on Exhibit 14F. Mental limitations only again but it's a different RFC all together. This hypothetical individual is unable to understand, remember and carry-out detailed instructions, unable to maintain attention and concentration for extended periods; unable to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, unable to complete a normal work day and

3

> work week without interruption from psychologically based symptoms, or to perform at a consistent pace without an unreasonable number and length of rest periods. Same question as I asked you for hypo one.

(Tr. 46-47.) The VE testified there would be "no jobs" for such a hypothetical individual. (Tr. 47.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Adkins was insured on his alleged disability onset date, August 14, 2008, and remained insured through the date of the ALJ's decision, May 20, 2011. (Tr. 13.) Therefore, in order to be

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

entitled to POD and DIB, Adkins must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Adkins established medically determinable, severe impairments, due to borderline intellectual functioning and anxiety-related disorders; however, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 15-17.) Adkins was found incapable of performing his past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a full range of work at all exertional levels but with certain nonexertional limitations. (Tr. 17-21.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Adkins was not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or

supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

### *Treating Psychiatrist Abraham*

Adkins argues the ALJ erred because he failed to identify treating psychiatrist Praveen Abraham, D.O., as the author of an October 15, 2009 Mental RFC Assessment that found Adkins had marked limitations in his ability to maintain a regular schedule and complete a normal workday and work week without undue interruptions from psychologically based symptoms. Adkins further maintains that, because the ALJ did not recognize that this Assessment was authored by a treating source, he failed to follow the treating physician rule when he accorded it "little weight."

The Commissioner does not deny, for purposes of this action, that Dr. Abraham authored the October 15, 2009 Mental RFC Assessment. (Doc. No. 19 at 10, fn 3). Nor does she dispute that Dr. Abraham qualifies as a "treating source." Rather, the Commissioner argues the ALJ "essentially assumed that the opinion was authored by a treating source and properly discounted it

for several sound reasons provided under the regulations." (Doc. No. 19 at 10.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2]

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). The purpose of this requirement is two-fold.

---

[2] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004)).  Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544.  Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

In addition, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability.  This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled.  "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*.  It is the

Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

Adkins presented to Dr. Abraham on August 28, 2009 for a psychiatric evaluation with "complaints of bipolar and depression." (Tr. 486, 469.) Adkins reported his depression was chronic and consisted of low mood, low energy, low interest, difficulty concentrating, and reduced appetite. (Tr. 469.) He reported intermittent auditory hallucinations and "periods which typically last one day but in the past have lasted months wherein he becomes exceedingly irritable." (Tr. 469.) He also stated he "becomes agitated and violent doing things like hitting himself and hitting walls." (Tr. 469.) In addition, Adkins displayed racing thoughts, grandiose ideations, and "psychomotor activation." (Tr. 469.)

Upon examination, Dr. Abraham found Adkins to be "pleasant and cooperative" and able to answer questions appropriately. (Tr. 470.) He described Adkins' affect as stable and reactive and noted no manifest psychosis or suicidal/homicidal ideation. (Tr. 470.) Dr. Abraham further stated Adkins' thoughts were logical and goal-oriented and his "insight and judgment appear adequate." (Tr. 470.) Dr. Abraham diagnosed Adkins with bipolar disorder, Type 1; alcohol abuse in remission; and, learning disorder NOS. (Tr. 470.) He prescribed Seroquel and recommended a follow-up visit in one month. (Tr. 470.)

On October 15, 2009, Adkins presented to Dr. Abraham and reported that the Seroquel provided "near complete resolution of AH [auditory hallucinations]" but caused significant side effects. (Tr. 482.) Dr. Abraham noted Adkins was "stable at present" and "very cooperative," with no suicidal or homicidal ideations. (Tr. 482.) He switched Adkins from Seroquel to

Zyprexa, and recommended he return for a follow-up visit in six weeks.  (Tr. 482.)

The record also contains a Mental RFC Assessment from the same date, October 15, 2009, which the parties agree was authored by Dr. Abraham.  (Tr. 501.)  This Assessment was made part of the record before the ALJ and marked as Exhibit 14F, page 4.  (Tr. 501.)  In this Assessment, Dr. Abraham offered that Adkins was moderately limited in his abilities to: (1) remember locations and work-like procedures; (2) understand, remember, and carry out very short and simple instructions; (3) sustain an ordinary routine without special supervision; (4) work in coordination with or proximity to others without being distracted by them; (5) make simple work-related decisions; (6) accept instructions and respond appropriately to criticism from supervisors; (7) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (8) respond appropriately to changes in the work setting; (9) travel in unfamiliar places or use public transportation; and, (10) set realistic goals or make plans independently of others.  (Tr. 501.)

Dr. Abraham also concluded that Adkins was markedly limited in his abilities to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; and, complete a normal workday or work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 501.)   He further indicated the above limitations were expected to last 12 months or more, and that Adkins was "unemployable."  (Tr. 501.)  Although the form contains a space to print the physician's name, the October 15, 2009 Mental RFC Assessment contains only Dr. Abraham's signature, which is illegible.  (Tr. 501.)

11

In his pre-hearing Brief, Adkins' counsel identified Dr. Abraham as Adkins' "treating psychiatrist;" referenced Dr. Abraham's October 15, 2009 report; and set forth the moderate and marked limitations assessed by Dr. Abraham. (Tr. 277.) Moreover, during closing arguments at the hearing, Adkins' counsel specifically referenced Dr. Abraham's assessment of marked limitations as follows:

> ATTY: Yes. And just as a short closing then, Your Honor, I feel that the exhibits that Your Honor was using for the first hypothetical question, the State Agency opinions, actually the State Agency, which is not terribly generous in finding limitations in most cases, they are finding substantial limitations here, even in base support areas. And if you take those, **together with the opinion of Dr. Abraham on the basic medical forms**; and Dr. Schroeder, also; and, the explanations there of why they feel that the limitations are marked in the basic work areas, that seems to be more consistent with the record; including the claimant's previous work attempts that have been so unsuccessful; and, the claimant's schooling; the claimant's inability to live independently; and, some of the other just practical necessities of needing guidance not only from the standpoint of cognitive problems, which have probably always been there but these fairly serious psychiatric problems. **When you add those and you try to think of someone with a limited adaptive functioning trying to adapt to the challenges that a mental illness like that would give someone, it seems– that seems to strengthen Dr. Abraham's opinion that this would produce marked limitations and not ones that could be easily worked around, Your Honor**. Thank you.

(Tr. 52-53) (emphasis added).

In his decision, the ALJ discussed Adkins' hearing testimony, the medical evidence, and the opinions of state agency physicians John Waddell, Ph.D., Ronald Smith, Ph.D., Joan Williams, Ph.D., and Aracelis Rivera, Psy.D.[3] (Tr. 17-20.) The decision does not, however,

---

[3] In October 2008, Dr. Waddell determined Adkins was moderately limited in his abilities to understand, remember and carry out detailed instructions; complete a normal workday or work week and perform at a consistent pace without undue interruptions; and, respond appropriately to changes in the work setting. (Tr. 403-404.) He also determined Adkins had moderate difficulties in maintaining social functioning, and concentration, persistence or pace. (Tr. 417.) In August 2009, Dr. Smith conducted an examination of Adkins and concluded he

reference Dr. Abraham or discuss his August 2009 Psychiatric Evaluation. The ALJ considered the October 15, 2009 Mental RFC Assessment as follows:

> In October 2009, an Ohio Job & Family Services physician or employee concluded that the claimant had some marked limitations in understanding and memory and sustained concentration and persistence with some moderate limitations. This representative also concluded that the claimant was "unemployable." Because the identity of this person is unknown and this person failed to elaborate or provide specific findings that lead to the opinion given, this opinion is given little weight. Also, the determination of employability is a vocational consideration, is out of the realm of this person's expertise, and is a determination left to the Commissioner of the Social Security Administration. (Exhibit 14F).

(Tr. 20-21.) He formulated the RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to maintain sufficient concentration and persistence to perform simple, repetitive tasks but would need a simple job demonstrated to him in order to comprehend the task. He would not be able to adequately read instructions and would be unable to manage funds. He is capable of understanding, remembering, and carrying out simple and routine instructions. He is able to interact occasionally and superficially, receive instructions, and ask questions appropriately in a work setting. He is able to cope with the ordinary and routine changes in a work setting that is not fast-paced or of high demand.

(Tr. 17.)

---

was not impaired in his ability to relate to fellow workers or the general public, but was moderately impaired in his ability to deal with supervisors. (Tr. 427.) He opined Adkins' ability to understand, remember, and follow instructions was moderately impaired and "[h]e would have to have a simple job demonstrated to him in order for him to comprehend the task." (Tr. 427.) Adkins' ability to withstand the stress of day to day work activity was moderately impaired, but his mental ability to maintain attention, concentration, and persistence in the performance of routine tasks was not impaired. (Tr. 427.) In September 2009, Dr. Williams offered that Adkins was moderately limited in his ability to understand, remember, and carry out detailed instructions; complete a normal work day and work week and perform at a consistent pace without undue interruptions; accept instructions from and respond appropriately to criticism from supervisors; and travel in unfamiliar places or use public transportation. (Tr. 428-429.) In January 2010, Dr. Rivera affirmed Dr. Williams' assessment. (Tr. 494.)

The Court finds the ALJ failed to articulate "good reasons" for rejecting Dr. Abraham's opinions regarding Adkins' marked limitations.[4] It is apparent from the face of the decision that the ALJ failed to recognize Dr. Abraham as the author of the October 15, 2009 Mental RFC Assessment. Moreover, contrary to the Commissioner's arguments, there is no indication the ALJ "essentially assumed" the author of the Assessment was a treating source. The ALJ does not expressly indicate that he considered this Assessment as having been written by a treating physician, nor does the content of his discussion of the Assessment suggest as much. Indeed, in considering the October 2009 Assessment, the decision fails to mention virtually any of the factors set forth in 20 C.F.R. § 404.1527(d)(2), including the length of the treating relationship and frequency of examination, the nature and extent of the treatment relationship, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

The ALJ does state, summarily, that he is according the Assessment little weight because the author "failed to elaborate or provide specific findings that lead to the opinion given." (Tr. 20-21.) However, the Court finds this single sentence is insufficient to demonstrate either that the ALJ considered Dr. Abraham a "treating source" or that his evaluation of the Assessment satisfied the "good reasons" requirement. Because the ALJ failed to recognize Dr. Abraham as the author of the October 2009 Assessment, he did not view that Assessment in conjunction with

---

[4] Because the Commissioner does not argue otherwise and the issue was not briefed by the parties, the Court assumes that Dr. Abraham, in fact, qualifies as a "treating source." However, this Opinion should not be construed on remand as a judicial determination that Dr. Abraham was Adkins' "treating psychiatrist" at the time he authored the October 2009 Mental RFC Assessment.

14

Dr. Abraham's treatment notes (Tr. 486, 482) or his August 2009 Psychiatric Evaluation report (Tr. 469-470.) Indeed, it is not clear the ALJ considered the August 2009 Evaluation at all in rendering his decision. As noted *supra*, the decision does not contain any direct references either to that Evaluation in particular or to Dr. Abraham generally. Further, as Adkins correctly notes, the ALJ's failure to properly consider Dr. Abraham's assessment of marked limitations cannot be considered harmless error, as the VE expressly testified there would be "no jobs" for a hypothetical individual possessing such limitations. (Tr. 46-47.)

The Court finds the ALJ failed to provide "good reasons" for according "little weight" to Dr. Abraham's assessment of marked limitations.[5] The Court further finds a remand is necessary to afford the ALJ an opportunity to sufficiently evaluate and explain the weight ascribed to the limitations assessed by Dr. Abraham. As this matter is being remanded for further proceedings, and in the interests of judicial economy, the Court will not consider Adkins' remaining assignments of error.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner is VACATED and the

---

[5] The ALJ did not, however, err in rejecting Dr. Abraham's opinion that Adkins was "unemployable," as that is a decision reserved for the Commissioner. *See Duncan*, 801 F.2d at 855.

case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

      IT IS SO ORDERED.

                                            /s/ Greg White
                                            U.S. Magistrate Judge

Date: December 2, 2013